UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

ALEXANDER FERMIN, MIA BODAY, AND ELLIOT
CRONIN-LIONS,

                                    Plaintiffs,

                    -against-

NYPD COMMISSIONER DERMOT SHEA, NYPD
CHIEF OF DEPARTMENT TERRANCE MONAHAN,
THE CITY OF NEW YORK,  POLICE OFFICER FRITZ
HECTOR, DETECTIVE MICHAEL DELGARDO,
DETECTIVE CRISTOFER SCHIAVONE, POLICE
OFFICER YUDELKA RODRIGUEZ, SERGEANT LUIS
S. MARTINEZ, SERGEANT PATRICK LINDIE,
POLICE OFFICER CARINA GARCIA, POLICE
OFFICER THOMAS GARRY, JOHN DOE NYPD
SUPERVISORS ##1-20 JOHN DOE POLICE OFFICERS
##1-20

                                    Defendants.

---------------------------------------------------------------------- x

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

DOCKET
#21CV2605(FB)(TAM)

ECF CASE

## PRELIMINARY STATEMENT

1.      On June 1, 2020, New York City Mayor de Blasio declared a "State of Emergency" in

response to the Black Lives Matter protests occurring around the city.

2.      Mayor de Blasio claimed that peaceful protests had been "escalated" by "some people"

to acts of assault, property damage, and theft.

3.      The curfew, ostensibly to prevent criminal behavior, escalated immediately into a

police free for all to prevent and punish the free exercise of speech if and when they felt like it.

That these unconstitutional police actions further escalated into police assaults on innocent

people engaging in their right to free expression and association could not have come as a

surprise to the Mayor of his Police Commissioner, and in fact their words and actions served to

promote police escalation.

4.     This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 USC §1983, §1988 and the First, Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

5.     The claim arises from a June 2, 2020 incident in which police officers subjected plaintiffs to excessive force, and violation of their equal protection against selective enforcement of the criminal law, and, in the case of Alexander Fermin, false arrest, malicious prosecution and retaliation for his exercise of free speech.

6.     Plaintiffs are seeking justice in every available forum they have. In this matter Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

<u>FACTUAL ALLEGATIONS WITH RESPECT TO THE CITY'S EXECUTIVE ORDERS
ENACTING THE CURFEW</u>

7.     On March 12, 2020, New York City Mayor Bill de Blasio declared a "State of Emergency" due to the COVID-19 public health situation.  No curfew was imposed.  The health related state of emergency was extended up to and past the times relevant herein.

8.     On May 28, 2020, the first Black Lives Matter protests in connection with the police killing of George Floyd took place in New York City.

9.     On June 1, 2020, Mayor de Blasio declared a new "State of Emergency" and instituted a curfew to begin at 11 PM that night until 5:00 AM on June 2.  Later on June 1, the Mayor extended the curfew to 8:00 PM on June 2, 2020 and ending at 5:00 AM, the morning of June 3. With certain exceptions, being out in public during the curfew could result in "orders to

disperse".  Failure to obey the order could constitute a "B" misdemeanor.

10.   On June 2, 2020, Mayor de Blasio extended the new State of Emergency and curfew to include June 3-June 8, 2020.[1]

11.   In his June 1 press conference announcing the curfew, Mayor de Blasio stated: "People out after 11 will be asked to go home and if they do not comply will be given a summons."[2]

12.   NYPD had different plans for the curfew. They were going to, and did, arrest, harass and taunt people over the curfew even if they were not first ordered to disperse and even if they were exempt at their "discretion."

13.   The order to disperse requirement prior to arrest was known to the top police brass, including Commissioner Shea.  He and others were consulted about the curfew before it went into effect.[3]  They knew what the executive order said and what it required of the public and the police prior to it being released.

14.   Yet, according to a lawsuit brought by the People of the State of New York, police officers throughout the time of the curfew "routinely" disregarded the requirement that they issue dispersal orders prior to making arrests for curfew violations.[4]

15.   It is not surprising that people were being illegally arrested since, according to the city's Department of Investigation, NYPD leadership granted officers and supervisors "discretion with respect to curfew enforcement".

16.   And indeed, on June 3, 2020, NYPD ratified police officers' illegal and unconstitutional behavior of not giving dispersal orders prior to arrest by issuing a "Finest

---

[1] The Mayor's curfew related Executive Orders are attached hereto as Exhibit A.
[2] 1.   https://www.politico.com/states/new-york/albany/story/2020/06/01/cuomo-de-blasio-order-11-pm-curfew-for-new-york-city-1289826.  Retrieved on March 15, 2021.
[3] New York City Department of Investigation Report, "Investigation Into NYPD Response to George Floyd Protests", page 48.
[4] 21CV322, ECF #1, Complaint, paragraph 40.

Message", distributed to the entire force, which purposefully dropped the dispersal order from its instructions about the curfew.

17.   The discretion afforded officers to enforce the curfew, along with the Commissioner and his leadership's purposeful exclusion of the dispersal orders requirement, enabled police officers to punish people for speech alone, or to selectively punish people for speech with the pretext of a curfew violation while leaving others unpunished who are similarly situated except for the speech uttered.  This punishment was meted out in the form of taunts, harassment and false or retaliatory arrest that led to the constitutional violations of plaintiffs and many like them across the city during the curfew.

### FACTUAL ALLEGATIONS WITH RESPECT TO RETALIATION FOR SPEECH

18.   More than 1,000 people were arrested in connection with the Black Lives Matter protests during the curfew.  Almost all related to the otherwise constitutionally protected act of protesting and not for the criminal behavior that the city claimed necessitated the curfew.

19.   Upon information and belief, no one was arrested for violating curfew who was not protesting.

20.   Upon information and belief, in a city of more than 8,000,000 people, people were out in public after the curfew who were not protesting.

21.   Furthermore, police officers and sergeants, as represented through their elected union leadership, maintain right-wing extremist views that are anathema to the message of the Black Lives Matter movement.

22.   Police Benevolent Association President Patrick Lynch, who has been elected and re-elected over two decades, is so popular he usually runs without opposition. The last time he had opposition was in 2015, when he gained 70% support of the popular vote of police officers.

23.    Sergeant Benevolent Association President Ed Mullin has similarly been re-elected over two decades.

24.    Both, not on behalf of themselves but on behalf of the police officers they represent, supported and endorsed Donald Trump for President.  Both have made numerous incendiary claims in their positions as elected union leaders both before and after the protests noted herein.

25.    Trump has espoused extremist views generally on race and policing and has specifically referred to Black Lives Matter as a "symbol of hate". He has also defended Kyle Rittenhouse, who is on video shooting three Black Lives Matter protesters in Kenosha, Wisconsin, killing two.

26.    While of course police officers in their capacities as individuals retain First Amendment rights and are entitled to their own political views, politics and policing is considered by police experts as "evil twins" that should be avoided.

27.    Given the discretion to selectively punish Black Lives Matter protesters by the NYPD leadership, the free rein to violate the law by dropping the dispersal order requirement from its Finest Message to all officers, and finally, the support for right wing extremist views and persons antithetical to Black Lives Matters policy positions, it was a *fait accompli* that police officers would abuse BLM protesters under the guise of the curfew.

**<u>JURISDICTION</u>**

28.    This action is brought pursuant to 28 USC §1331, 42 USC §1983, and the First and Fourth Amendments to the United States Constitution.  Pendent party and supplemental jurisdiction are asserted.

29.    Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York and the Plaintiffs are located within.

## PARTIES

30.   Plaintiff Alexander Fermin is a Latino man and United States citizen who resides in Queens County, City and State of New York.  He was arrested protesting in support of the Black Lives Matter movement and against police brutality and abuse of people of color.

31.   Plaintiff Mia Boday is a Caucasian woman and United States citizen who resides in Queens County, City and State of New York.  She was arrested protesting in support of the Black Lives Matter movement and against police brutality and abuse of people of color.

32.   Plaintiff Elliot Cronin is a Caucasian man and United States citizen who resides in Queens County, City and State of New York.  He was arrested protesting in support of the Black Lives Matter movement and against police brutality and abuse of people of color.

33.   Defendant Dermot F. Shea was at all times here relevant the New York City police commissioner.  He has final policymaking and decisionmaking authority with respect to the NYPD and responsibility for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD. He is sued in his individual and official capacities.

34.   Defendant Terence A. Monahan was at all times here relevant the Chief of Department for the NYPD. As the highest-ranking uniformed officer of the NYPD, Chief Monahan has been delegated final policymaking authority with respect to NYPD policies, including, but not limited to, those related to management of protests, use of force, and arrests. He is sued in his individual and official capacities.

35.   Defendant Police Officers Fritz Hector, Yudelka Rodriguez, Carina Garcia and Thomas Garry, Detectives Michael Delgardo and Christofer Schiavone, and Sergeants Luis Martinez and

Patrick Lindie were at all times here relevant employees of the NYPD and are sued in their individual and official capacities.

36.   The City of New York is a municipal corporation organized under the laws of the State of New York.

37.   All other defendants were at all times here relevant employees of the NYPD and are sued in their individual and official capacities.

<u>SPECIFIC ALLEGATIONS WITH RESPECT TO THE PLAINTIFFS</u>

38.   On June 2, 2020 the three Plaintiffs were marching in a protest march in support of Black Lives Matter.

39.   The march had been peaceful throughout except when it was violently interrupted by police officers.

40.   At approximately 8:30 PM, they were marching on Fifth Avenue in the vicinity of the Metropolitan Museum of Art near 84th Street.

41.   The protest was being followed and monitored by numerous police officers.

42.   In the moments prior to the incident beginning, the police officers following the march were walking faster and faster and getting closer to the marchers.  Their action increased the tension in the march.

43.   Seeing the police closing in, with some seeming to have a more aggressive demeanor, the Plaintiffs went to the back of the march.  They wanted to place themselves between the officers and the black people in the crowd, believing that black protesters are more vulnerable to police brutality and more often subjected to such brutality than themselves.

44.   When Plaintiff Fermin made it to the back he could see the officers continuing to get closer.  Mr. Fermin said in sum and substance "we are afraid because you are coming up on us like this."

45.   Indeed, the increasingly aggressive movements towards the protesters was confirmed by Defendant Officer Rodriguez, who remarked about one minute before the incident that "they get scared when you get close to them."

46.   One of the Defendants, Police Officer Fritz Hector who was walking behind chose to escalate the tension of the situation.  He replied, in an aggressive and taunting manner in sum and substance that he could arrest him for a curfew violation if he wanted.

47.   Of course, under the Executive Order declaring the curfew, he could not have legally arrested Mr. Fermin for violating the curfew.  There had been no dispersal orders, and no police officers told the marchers to "go home".

48.   Out of anger for this police officer's taunting, aggressive response, Mr. Fermin said, in sum and substance, "fuck your curfew, fascist pig."

49.   Being familiar with cases of police brutality such as the case of George Floyd and Eric Garner in which men were killed by police for even lesser challenges to their authority, Mr. Fermin grew concerned and moved up in the march away from the officers to de-escalate the situation and to hopefully keep himself safe.

50.   Mr. Fermin's attempt to de-escalate did not work.  Instead, Defendant Officer Hector aggressively and dangerously lurched into the crowd grabbing Mr. Fermin from behind as other officers began swinging batons at marchers and tossing aside women protesters like rag dolls.

51.   Mr. Fermin was pulled backwards and thrown to the ground.  He very quickly had numerous John Doe Defendant police officers on top of him.  At least one officer, believed to be

Defendant Officer Thomas Garry was putting a great deal of pressure on his back close to his neck, causing Mr. Fermin to scream out in fear.

52.    Defendant Officer Hector taunted him as he was pinned to the ground, saying to him in his ear in sum and substance "I told you I would get you, you're quiet now, aren't you?"

53.    At no time did Mr. Fermin resist arrest.

54.    When the police initiated their riot and assault on Mr. Fermin, Plaintiffs Mia Boday and Elliot Cronin moved along with other members of the march towards the curb and away from the police riot.  Boday and Cronin are a couple.

55.    After a short period, Ms. Boday went to assist one of the people who were violently tossed aside by the police when they entered the march.  She had been carrying some first aid with her and wanted to offer to help. The people tossed aside had no police officers around them.

56.    As Ms. Boday moved toward the marcher on the ground, she was struck violently in the neck with a police baton wielded by Defendant Officer Yudelka Rodriguez without any warning and for no legitimate purpose and wholly without justification.

57.    The first baton strike caused Ms. Boday to move backwards.

58.    She was then struck a second time by Defendant Officer Rodriguez with the baton which caused her to fall to the ground. As she was on the ground Defendant Officer Rodriguez, Defendant Detective Schaivone, and John Doe Defendants, continued to beat her.  Defendant Police Officer Carina Garcia either assisted Rodriguez and the John Doe Defendant in unjustifiably assaulting her, or failed to intervene in the obviously unconstitutional actions being taken by her fellow officers.

59.    Plaintiff Elliot Cronin saw that his girlfriend, Ms. Boday, was being attacked by police. He yelled "get off her".  In response he was tackled to the ground and was assaulted, including

being hit twice with a baton, by Defendant Detective Michael Delgardo and John Doe Defendant officers.

60.   Neither Ms. Boday nor Mr. Cronin were resisting arrest.

61.   All three plaintiffs – Fermin, Boday and Cronin – were zip tied and made to sit on the curb for about 15 minutes even though each was injured and in need of medical assistance.  No one asked if they needed any assistance.

62.   Mr. Fermin vomited while on the curb.  He asked an officer to loosen his zip tie because it was so painfully tight and it was making him sick.  Though Defendants Delgardo, Schiavone and Martinez had him in their collective custody, neither they nor any other officer assisted him.

63.   Ms. Boday was zip tied by Detective Schiavone.  After she was zip tied Officer Rodriguez  kissed Detective Schiavone and then disappeared into the crowd.

64.   Ms. Boday repeatedly demanded to know the identity of Officer Rodriguez, including demanding her badge number.  Ms. Boday's requests were ignored.

65.   Many officers were covering their names and numbers on their badges to avoid being identified.

66.   The march continued on Fifth Avenue without further arrests at the time of Plaintiffs' arrest.

67.   Under the supervision of and with orders from Defendants Lindie and Martinez. all three were transported to the 19th precinct while remaining zip tied.  For no legitimate purpose and only for reasons of hurting and frightening him, officers roughly grabbed and manhandled Plaintiff Fermin as he was taken into the precinct and inside the precinct. Plaintiffs Cronin and Fermin were then lodged into a cell and Boday was handcuffed to a bench.

68.   No police officers inside the precinct were wearing masks or any other gear to mitigate the spread of COVID-19.

69.   A John Doe Defendant officer got within inches of Mr. Fermin's face and screamed at him, among other things, to "shut the fuck up". The officer was maskless and otherwise taking no COVID-19 precautions.

70.   Defendant Detective Delgardo, under the direction and supervision of Defendant Sergeant Martinez, issued summonses against Plaintiffs Boday and Cronin for Disorderly Conduct.   Defendant Officer Hector under the supervision of Sgt. Lindie issued a summons against Mr. Fermin also for Disorderly Conduct for use of obscene language.

71.   All summonses against the Plaintiffs were dismissed.

72.   All three were injured but were not offered access to any medical treatment.

73.   Defendant Officer Hector ripped the shirt off of Mr. Fermin in the course of his attack. Mr. Fermin was forced to go naked from the waste up throughout his entire ordeal and was not even given something to cover himself up when he was released from the precinct.

74.   Sergeant Lindie was supervising eight officers at the time of the incident, including Defendants Hector, Rodriguez, Garcia and Garry and either directed them to take the unconstitutional actions described above or otherwise caused them to take such action by tacitly accepting such conduct and not ordering them to stop.

75.   Most officers were not wearing masks or other protective gear designed to minimize the spread of COVID-19.   The Plaintiffs, and indeed virtually all the marchers, were masked in order to protect others from the spread of the virus, including police officers.

76.   Within 90 days of the events giving rise to this claim, plaintiffs filed written notice of claim with the City of New York, Comptroller's Office. Over 30 days have elapsed since the

filing of that notice, and this matter has not been settled or otherwise disposed of.

77.   Each Plaintiff made a complaint to the Civilian Complaint Review Board.

78.   At all times during the events described above, the Defendant police officers were acting in concert to violate plaintiff's rights.   The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.   They failed to intervene in the obviously illegal actions of their fellow officers against the Plaintiffs.

79.   During all of the events above described, Defendants acted maliciously and with intent to injure plaintiff.

80.   As a direct and proximate result of the acts of Defendants, Plaintiffs suffered the following injuries and damages:

a.   Violation of their rights pursuant to the Fourth Amendment to the United States Constitution to be free from an unreasonable search and seizure;

b.   Violation of their rights pursuant to the Fourteenth Amendment to the United States Constitution to equal protection under the law;

c.   Pain and suffering;

d.   Emotional and psychological trauma and suffering;

e.   Each were forced to obtain COVID-19 tests and obtain other medical treatment;

f.   Loss of liberty.

g.   Plaintiff Alexander Fermin suffered the violation of his rights under the First Amendment to not be retaliated against for exercising his free speech rights.

**FIRST CAUSE OF ACTION**
**(42 USC § 1983 – EXCESSIVE FORCE)**
**(STATE LAW – ASSAULT AND BATTERY)**

79.     The above paragraphs are here incorporated by reference.

80.     Defendants, without justification, assaulted and battered Plaintiffs even though Plaintiffs posed no physical or any other kind of threat to the officers or anyone else and were not resisting arrest.

81.     By approaching Plaintiffs with physical aggression, and repeatedly subjecting them to offensive and painful touching, Defendants made Plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching.

82.     Defendants acted under color of law to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure pursuant to the Fourth Amendment to the United States Constitution when they subjected Plaintiff to excessive force. Defendants are liable to plaintiff under 42 U.S.C. §1983 and under New York state law.

83.     Plaintiffs have been damaged by Defendants' wrongful acts.

**SECOND CAUSE OF ACTION**
**(STATE LAW ASSAULT AND BATTERY)**

84.     The above paragraphs are here incorporated by reference.

85.     Defendants subjected Plaintiffs to assault and battery by approaching Plaintiffs without taking any precautions whatsoever to mitigate the contagiousness of COVID-19, including not wearing masks, by talking and yelling at them well within the CDC recommended six foot social distance, and by purposefully and maliciously getting close to them even after they were in custody while speaking, yelling, and breathing.

86.     Plaintiffs were damaged as a result of Defendants unlawful behavior and are liable to Plaintiffs under New York State Law.

### THIRD CAUSE OF ACTION
### (42 USC § 1983 -- FALSE ARREST)
### (STATE LAW – FALSE ARREST)

87.     The above paragraphs are here incorporated by reference.

88.     Defendants subjected Plaintiffs to false arrest without probable cause, or failed to intervene in their fellow officers' conduct despite having opportunity to do so.

89.     There was no reasonable expectation of successfully prosecuting plaintiffs.

90.     Plaintiffs were aware of their confinement and did not consent.

91.     Defendants acted under color of law to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure pursuant to the Fourth Amendment to the United States Constitution when they illegally and falsely arrested Plaintiffs.  Defendants are liable to plaintiff under 42 U.S.C. §1983 and under New York law.

92.     Plaintiffs have been damaged as a result of Defendants' wrongful acts.

### FOURTH CAUSE OF ACTION
### (STATE LAW – FALSE IMPRISONMENT)

93.     The above paragraphs are here incorporated by reference.

94.     Defendants subjected Plaintiffs to false imprisonment, or failed to intervene in their fellow officers' conduct despite having opportunity to do so.

95.     Defendants unlawfully restrained and confined Plaintiffs against their will and did so without legal justification.

96.     Alexander Fermin's unlawful false imprisonment was caused by Defendants' retaliatory arrest and confinement for exercising his First Amendment right to free speech.

97.    <u>Mia Boday and Elliot Cronin</u> were subjected to unlawful false imprisonment when defendants selectively enforced the curfew declaration and/or the Penal Law's Disorderly Conduct statute to arrest and confine these Plaintiffs.

98.    Plaintiffs were aware of their confinement and did not consent.

99.    Defendants acted under color of law to deprive Plaintiffs of their rights under New York State law when they restrained and confined Plaintiffs without legal justification. Defendants are liable to plaintiff under New York State law.

**FIFTH CAUSE OF ACTION**
**(42 USC § 1983 – MALICIOUS PROSECUTION)**
**(STATE LAW – MALICIOUS PROSECUTION)**

100.    The above paragraphs are here incorporated by reference.

101.    Defendants, acting with malice, initiated a prosecution against Plaintiffs and caused him to be prosecuted, or failed to intervene in their fellow officers' conduct despite having opportunity to do so.

102.    The criminal proceedings were terminated favorably to Plaintiffs.

103.    There was no probable cause for the charges against this Plaintiffs.

104.    Defendants acted under color of law to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure pursuant to the Fourth Amendment to the United States Constitution when they maliciously prosecuted Plaintiff. Defendants are liable to plaintiff under 42 U.S.C. §1983 and New York state law.

105.    Plaintiffs have been damaged as a result of Defendants' wrongful acts.

**SIXTH CAUSE OF ACTION**
**(42 USC § 1983 – FIRST AMENDMENT RETALIATION)**

106.    The above paragraphs are here incorporated by reference.

107.    Plaintiff <u>Alexander Fermin</u> was participating in a march on a public street with and adjacent to hundreds of other similarly situated people.

108.    Plaintiff Fermin was participating in a march in a public place after the 8:00 PM curfew began with and adjacent to hundreds of other similarly situated people.

109.    Defendant Officer Hector bypassed numerous similarly situated people and targeted Plaintiff Fermin for arrest.

110.    Defendant Officer Hector targeted Plaintiff Fermin for arrest purely based on his speech described above in this Complaint.

111.    Indeed, Plaintiff Fermin was charged by Defendant Hector with an "obscene language" Disorderly Conduct violation in violation of his First Amendment right to free speech.

112.    The march was permitted by police to continue in the public street after the 8:00 PM curfew began without further arrests after the incident.

113.    Defendants acted under color of law to deprive Plaintiff of his civil, constitutional and statutory rights to be free from the abridgement of his free speech rights pursuant to the First Amendment to the United States Constitution when they arrested him in retaliation for exercising his free speech rights.  Defendants are liable to Plaintiff under 42 U.S.C. §1983.

114.    Plaintiff has been damaged as a result of Defendants' wrongful acts.

**<u>SEVENTH CAUSE OF ACTION</u>**
**(42 USC § 1983 – SELECTIVE ENFORCEMENT OF CRIMINAL LAW)**

115.    The above paragraphs are here incorporated by reference.

116.    Plaintiffs <u>Boday and Cronin</u> were participating in a march on a public street with and adjacent to hundreds of other similarly situated people.

117.    Plaintiffs Boday and Cronin were participating in a march in a public place after the 8:00 PM curfew began with and adjacent to hundreds of other similarly situated people.

118.    Plaintiffs Boday and Cronin, and only them, were arrested and charged with Disorderly Conduct for "blocking vehicular traffic".

119.    Disorderly Conduct is a minor violation of criminal law, below a misdemeanor.

120.    Plaintiffs Boday and Cronin were selectively arrested for Disorderly Conduct while others who were engaged in the exact same conduct were not arrested.  In fact, the other marchers were permitted to carry on the conduct that Plaintiffs Boday and Cronin were arrested for after the arrests.

121.    Defendants' arrest of Plaintiffs Boday and Cronin was utterly arbitrary and based on bad faith, malice and an intent to injure Boday and Cronin without just cause.

122.    Defendants acted under color of law to deprive Plaintiffs Boday and Cronin of their civil, constitutional and statutory rights to equal protection under the law pursuant to the Fourteenth Amendment to the United States Constitution when they arrested them. Defendants are liable to Plaintiffs under 42 U.S.C. §1983.

123.    Plaintiffs Boday and Cronin have been damaged as a result of Defendants' wrongful acts.

## EIGHTH CAUSE OF ACTION
### (MUNICIPAL AND SUPERVISORY LIABILITY – SELECTIVE AND RETALIATORY ENFORCEMENT OF THE CURFEW)

124.    The above paragraphs are here incorporated by reference.

125.    Defendants Shea, Monahan and John Doe Supervisors knew, or recklessly disregarded the knowledge Shea, Monahan and the John Doe Supervisors are policymaking and final decisionmaking agents for the City of New York's Police Department.

126.    The City of New York, through Shea, Monahan and John Doe Supervisors determined to give police officers who were assigned to the Black Lives Matters protests in May – June, 2020, broad discretion in enforcing the curfew declaration signed by Mayor de Blasio.

127.    Shea, Monahan and John Doe Supervisors knew, or recklessly disregarded the knowledge that police officers would misuse their discretion in enforcing the curfew in a manner that would violate the constitutional and civil rights of protesters.

128.     Shea, Monahan and John Doe Supervisors knew, or recklessly disregarded reports and knowledge that on June 1, 2020 police officers were making arrests for violating the curfew selectively with malicious intent and to suppress speech.

129.    Shea, Monahan and John Doe Supervisors knew, or recklessly disregarded reports and knowledge that on June 1, 2020, police officers were making arrests for curfew violations without first issuing dispersal orders in violation of the Mayor's Executive Order.

130.    On June 2, 2020, Plaintiff Alexander Fermin was told by Defendant Officer Hector that he could arrest him for violating the curfew (he could not, no officers had issued any dispersal orders).

131.    Defendant Officer Hector's taunt about the curfew order and Plaintiff Fermin's legitimate, if angry, response cause Defendant Hector to escalate the situation and arrest Fermin for no legitimate purpose.

132.    The escalation by Defendant Officer Hector caused other police officers to enter the crowd swinging batons and otherwise assaulting other marchers, causing injury to Plaintiffs Boday and Cronin.

133.    Shea, Monahan and John Doe Supervisors not only failed to stem the obviously unconstitutional arrests being made by police officers under the auspices of the curfew

declaration, but they sought to empower police officers, including Defendants herein, to make such unlawful and arbitrary arrest by communicating to the rank and file that they were permitted to make curfew arrests without dispersal orders.

134.    Such communications falsely representing the curfew declarations culminated in the June 3 "Finest Message" telling the rank and file that they may make curfew arrests without dispersal orders.

135.    The actions, inactions and communications led to highly foreseeable false, unconstitutional arrests of protesters and the escalation of police violence against protesters while effecting such undue arrests, including the Plaintiffs herein.

136.    Plaintiffs were damages as a result of Shea's, Monahan's, John Doe Supervisors' and the City of New York's failures described herein.

**NINTH CAUSE OF ACTION**
**(MUNICIPAL AND SUPERVISORY LIABILITY – POLICY AND PRACTICE OF VIOLENCE AGAINST PROTESTS)**

137.    The City, Commissioner Shea and Chief Monahan are liable for the damages suffered by Plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of Plaintiffs' and others constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.  These Defendants have been alerted to the regular use of excessive force and false arrests by its police officers in connection with protests, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiffs' constitutional rights.

138.  The deprivations of constitutional rights during the 2020 protests is directly attributable to the City's disregard of many years of notice related to its unconstitutional policing of similar protests over the past twenty years, including those against the World Economic Forum (the "WEF") in 2002, the Iraq War in 2003, the Republican National Convention ("RNC") in 2004, the Occupy Wall Street ("OWS") protests in 2011 and 2012, and many other protests since, including Black Lives Matter and anti-police brutality protests.

139. The NYPD response to the protests in New York City in June 2020 was consistent with its history of violent and unconstitutional responses to past protests in New York City, including its treatment of First Amendment assemblies with brutal excessive force, rather than genuine efforts to facilitate protesters' protected First Amendment activity.

140. For example, the NYPD met protests following the start of the Iraq War in 2003 with mass arrests, use of pepper spray, batons strikes and other methods of excessive force to retaliate against and disperse protesters.

141. The next year, during the police "Operation Overlord II" operation in response to the Republican National Convention in 2004, NYPD members treated protestors to similar uses of excessive force and retaliatory arrests.

142. The NYPD continued to employ similar arrest and excessive force tactics during a years-long crackdown on Critical Mass bicycle rides beginning in 2004.

143. Similarly, during the Occupy Wall Street ("OWS") protests in 2011, the NYPD used false arrests and excessive force against protestors, bystanders, and legal observers.

144. Foreseeably, Defendants have employed the same tactics and practices against Black Lives Matter, police accountability, and other, similar protests, over the intervening years.

145. Following NYPD conduct during these and other protests, the City of New York and the NYPD and its members have been sued repeatedly by protestors who alleged that they had been unlawfully subjected to excessive force, detained, arrested, and had their First Amendment rights violated and other, related rights, much in the same manner as have the Plaintiffs in this case.

146. Indeed, in Plaintiffs' cases, Defendants employed tactics developed and modified over the course of many years by Defendants Shea, Monahan, and their predecessors and by other defendant City policymakers at and in connection with other demonstrations in the City dating back to around 2000 and continuing through the present, including the policies, practices, and customs complained of herein, and also described and litigated in the following cases: *Mandal v. City of New York.,* 02 Civ. 1234 (WHP)(FM) (S.D.N.Y.) and related cases; *Burley v. City of New York*, 03 Civ. 2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. 2005); *Allen v. City of New York,* 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006); *Haus v. City of New York,* 03 Civ. 4915 (RWS)(MHD) 2006 WL 1148680 (S.D.N.Y. 2006); *Kunstler v. City of New York*, 04 Civ. 1145 (RWS)(MHD) (S.D.N.Y.) and related cases; *MacNamara v. City of New York*, 04 Civ. 9216 (RJS)(JCF) (S.D.N.Y.); *Abdell. v. City of New York*, 05 Civ. 8453 (RJS)(JCF) (S.D.N.Y.); *Schiller. v. City of New York*, 04 Civ. 7922 (RJS) (JCF) (S.D.N.Y.); *Dinler v. City of New York*, 04 Civ. 7921 (RJS)(JCS) (S.D.N.Y.); *Kyne v. Wolfowitz,* 06 Civ. 2041 (RJS)(JCF) (S.D.N.Y.) and the dozens of consolidated cases; *Callaghan v. City of New York,* 07 Civ. 9611 (PKC)(JLC) (S.D.N.Y.); *Osterhoudt v. City of New York, et al.*, No. 10 Civ. 3173 (RJC)(RML) 2012 WL 4481927; *Councilmember Ydanis Rodriguez, et al., v. Deputy Inspector Edward Winski, et al.,* 12 CV 3389 (NRB) (S.D.N.Y.);  *Marisa Holmes v. City of New York, et al.*, 14 Civ. 5253 (LTS) (S.D.N.Y.)*; Packard* v. *City of New York* 15-cv-7130 (S.D.N.Y.) (AT); *Case v. City of New York,* 14-cv-9148 (S.D.N.Y.); *Peat v. City of New York,* No. 12 Civ. 08230 (S.D.N.Y.).

147.  The Defendants gross negligence and/or deliberate indifference to the history of NYPD excessive use of force and false arrests of protesters has resulted in constitutional, physical and emotional injury to Plaintiffs.

## TENTH CAUSE OF ACTION
## (RESPONDEAT SUPERIOR)

148.   The preceding paragraphs are here incorporated by reference.

149.   Defendants' intentional tortious acts were undertaken within the scope of their employment by Defendant City of New York and in furtherance of the Defendant City of New York's interest.

150.   As a result of Defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

A.      In favor of Plaintiffs in an amount to be determined by a jury for each of  the Plaintiffs' causes of action;

B.      Awarding Plaintiffs punitive damages in an amount to be determined by a jury (except as to the Municipal Defendant);

C.      Awarding Plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.      Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:      New York, New York
                 June 30, 2022

TO:   Defendants                          Yours, etc.,
                                       /s/
                              Leo Glickman, Esq.
                              Bar #LG3644
                              Attorney for Plaintiff
                              5030 Broadway, Ste. 652
                              New York, NY 10034
                              (718) 852-3710
                              lglickman@stollglickman.com